THE CITY OF CHICAGO, Plaintiff-Appellant, *v.* JOSEPH V. KUTIL *et al.*, Defendants-Appellees.

First District (1st Division)   No. 61233

Opinion filed November 8, 1976.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellant.

Howard M. Turner, of Chicago, for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

This appeal involves a failure of the owner of a two-story building to enclose the stairwell leading to a second-floor apartment with fire-

resistant material of the type prescribed by the City of Chicago Building Code and to protect the openings into the stairwell with doors prescribed by the Code. This action was initiated by a complaint filed by the City of Chicago seeking to require the defendant to put his building in compliance with the Municipal Code. The defendant contended: First, that the building did not violate the Code; second, if it did, the violation predated the municipal ordinances and the ordinances were not retroactive; and finally, that compliance should be excused because its cost would be an unreasonable exaction as compared with the benefits which would result from compliance.

The circuit court concluded that the City's fire-protection ordinances applied to the defendant's premises, that they had retroactive application and that the building failed to comply with them. It found, however, that the defendant would suffer unreasonable exactions as compared with the resulting public benefits if compelled to bring his building into compliance with the Code. For this reason, the circuit court found that the public welfare did not require that the ordinances in question be retroactively applied to defendant's building, and dismissed the complaint with prejudice.

Defendant's building is in substantially the same condition as it has been since 1954. It contains an apartment on the first floor and one on the second floor. The buildings on either side of defendant's have the same type of stairwell and construction as the one owned by defendant. The defendant has lived in his building in the first-floor apartment for 11 years, and the building is more than 60 years old. The second floor which is rented for $145 per month has a rear stairway as well as access through the stairwell which is the subject matter of this action. The distance from the top of defendant's building to the ground is approximately 30 feet.

In offering his defense, defendant testified that his monthly income, including the rental for the second-floor apartment, was "$1,045 gross" and that his monthly expenses were $976 before payment of income taxes. No breakdown of defendant's monthly income and expenses were included in the record, and defendant's statement of his "gross" monthly income did not incude the rental value of the apartment he occupied. The defendant also testified that it would cost between $1,050 and $1,085 to bring the stairwell into compliance with the Municipal Code.

A city building inspector testified that the stairwell had a fire-resistant rating of one-half hour; the Code required the stairwell to be enclosed with walls and partitions providing fire-resistant rating of at least 1 hour and protection of the underside of the stairs by material with the same rating.

Defendant first contends that chapter 62—3.2(c) of the Municipal Code of Chicago exempts his building from other portions of chapter 62 the City seeks to apply. The exemption provided by chapter 62—3.2(c) does

not cover defendant's building because it contains two or more apartments with a stairway which is not entirely contained within a dwelling unit.

Defendant next argues that chapter 62 of the Building Code, portions of which the City complains were violated, should not be applied retroactively because of chapter 67—1 of the Building Code. The latter provision, which deals with exits, provides that it is applicable only to buildings erected after its enactment. Chapter 67—1, however, does not refer to the portions of chapter 62 which the City charges were violated. And, there is no indication in any part of chapter 62 that it was intended by the Chicago City Council to apply only prospectively. The contrary, in fact, is indicated by chapter 78—4 which requires existing buildings to comply with the fire-protection requirements of the Code. See *City of Chicago v. L. J. Sheridan & Co.* (1958), 18 Ill. App. 2d 57, 73, 151 N.E.2d 451.

■■ The power of municipal government to promote public health and safety by requiring modification of buildings which predated, even by many years, a corrective ordinance has been long and solidly established in this State. (*City of Chicago v. Miller* (1963), 27 Ill. 2d 211, 188 N.E.2d 694; *Kaukas v. City of Chicago* (1963), 27 Ill. 2d 197, 201, 188 N.E.2d 700, *appeal dismissed*, 375 U.S. 8, 11 L. Ed. 2d 40, 84 S. Ct. 67; *Abbate Bros. v. City of Chicago* (1957), 11 Ill. 2d 337, 343, 142 N.E.2d 691, *appeal dismissed*, 355 U.S. 65, 2 L. Ed. 2d 106, 78 S. Ct. 140; *City of Chicago v. Sheridan* (1976), 40 Ill. App. 3d 886, 353 N.E.2d 270.) In *Kaukas*, an ordinance which retroactively eliminated the use of glass-panel doors as a secondary exit was upheld notwithstanding a prior ordinance which had specifically permitted glass panels of a prescribed size and strength. We conclude that the Chicago City Council not only had the authority to make its fire-protection requirements retroactive, but intended that the ordinances which the City is enforcing in this case be retroactive and apply to existing buildings including preordinance buildings. This court in *City of Chicago v. James F. Sheridan*, which involved the same ordinances as this case, reached the same conclusion.

■■ ■ The rule which the circuit court applied in exempting defendant's building from compliance with the Code and which was also relied upon to excuse compliance in *City of Chicago v. James F. Sheridan* was fashioned in *Abbate Bros. v. City of Chicago* (1957), 11 Ill. 2d 337, 343, 142 N.E.2d 691, *appeal dismissed*, 355 U.S. 65, 2 L. Ed. 2d 106, 78 S. Ct. 140, and redefined and discussed in *City of Chicago v. Miller* (1963), 27 Ill. 2d 211, 219, 188 N.E.2d 694, and in *Kaukas v. City of Chicago* (1963), 27 Ill. 2d 197, 201, 188 N.E.2d 700, *appeal dismissed*, 375 U.S. 8, 11 L. Ed. 2d 40, 84 S. Ct. 67. In *Kaukas*, the court explained the rule as follows:

"The question in these cases is whether the public welfare demands retroactive application and whether the property owners affected suffer unreasonable exactions as compared with the resulting public benefits. The public has a right to the safest method of protection from fire which can be found and a municipality has the duty to provide such protection." (27 Ill. 2d 197, 201.)

Although the above cases established a theory which can be used to avoid retroactive application of building codes, the only Illinois reviewing court opinion which has concluded that such an exemption was proper is *City of Chicago v. Sheridan.* Occupants of buildings should be given every reasonable protection against the threat of fire; children, and even adults, who may occupy the second-floor apartment in defendant's building should not have to rely on jumping out of second-floor windows to escape from fire. It is, therefore, our view that the exception to retroactive application of fire-protection requirements should be applied sparingly, and that doubt should be resolved in favor of retroactive application of such ordinances.

■■ The defendant has not made a record in this case which is complete enough to enable us to resolve whether his situation merits the exemption from retroactive enforcement that he seeks. He failed to offer evidence of the value of his building, the amount of encumbrances upon it, the availability of financing the improvement, and his net worth. In determining whether the cost of complying with the ordinances was an unreasonable exaction, the opinion in *Kaukas* turned upon a comparison of the value of the building and the cost of the improvement rather than, as the circuit court approached the question in this case, by a comparison of the owner's income and expense. The court in *Kaukas* observed that the owner had an investment of $59,000 in the building to which the City was seeking to apply building ordinances retroactively, while compliance would cost between $5,000 and $10,000. The court also referred to *Queenside Hills Realty Co. v. Saxl* (1946), 328 U.S. 80, 90 L. Ed. 1096, 66 S. Ct. 850, noting that in *Queenside* a building statute was applied retroactively where the complaint alleged that the value of the building was about $25,000 and the cost of compliance was about $7,500. The record also lacks an explanation as to the degree of additional protection 1-hour fire-resistant material will provide for the second-floor occupants as compared with the existing material in the stairwell so that this court can appraise the resulting public benefits. Without the additional evidence noted in this paragraph we are in no position to determine whether it was appropriate for the circuit court to apply the exemption defendant urged upon it. The case should, therefore, be remanded to the circuit court for additional hearings so that the defendant may have an

opportunity to develop this evidence. It would be an injustice to the public, to the defendant and particularly to persons occupying the second-floor apartment in the future to resolve this appeal with so many facts needed to sustain defendant's position not included in the record.

*City of Chicago v. Sheridan* was tried at the same time and by the same circuit court judge as this case. Both complaints, as noted above, charged violations of the same ordinances, and the buildings involved in the two cases appear to be of similar construction. Yet, the remand directed by this opinion may lead to a different conclusion than that reached in *City of Chicago v. Sheridan*. In upholding the circuit court's determination in that case that the public welfare did not require retroactive application of the ordinances, another division of this court emphasized the income of the widowed owner, the cost of repair, and the condition of the building having remained unchanged for 25 years. We believe, however, that the additional inquiries referred to in the preceding paragraph are relevant to this determination, and must be considered when balancing the exaction imposed upon the defendant against the resulting public benefit. In view of the ever-present menace of fire, we should be wary of eroding the City Council's intention to provide retroactive protection, unless it can be clearly shown that (i) the additional protection which will be afforded by compliance is insignificant in terms of difficulty of escape in comparison with the fire protection which presently exists; and (ii) the cost of compliance would be unreasonable when measured against such factors as the value of the building less present encumbrances, the availability of financing and the defendant's net worth.

Accordingly, this cause will be reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded for further proceedings not inconsistent with this opinion.

GOLDBERG, P. J., and O'CONNOR, J., concur.